## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LISA GRITZINGER

   *Plaintiff*,

*v.*

COMISSIONER OF SOCIAL
SECURITY,

   *Defendant*.

_____/

CASE NO. 20-CV-11878

HON. MATTHEW F. LEITMAN
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 18, 19)

### I.  RECOMMENDATION

Plaintiff Lisa Gritzinger challenges the Commissioner of Social Security regarding an Appeals Council order in her claim for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). The case was referred to the undersigned for review. (ECF No. 3; text-only order reassigning case to the undersigned on June 25, 2021); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons below, I recommend **DENYING** Plaintiff's motion for summary judgment, (ECF No. 18), **GRANTING** the Commissioner's motion, (ECF No. 19), and affirming the decision.

II.    <u>**REPORT**</u>

### A. Introduction and Procedural History

Plaintiff filed an application for DIB and SSI on August 26, 2014. (ECF No. 11-3, PageID.123-124.) She amended her alleged onset date to March 1, 2015. (ECF No. 11-5, PageID.200; PageID.218.)

In September 2016, after a hearing, an administrative law judge ("ALJ") denied Plaintiff's claim. (ECF No. 11-2, PageID.56-73.) The Appeals Council ("AC") denied review and Plaintiff sought judicial review. (ECF No. 11-2, PageID.45-51.)

At the time of judicial review, Defendant sought remand "in order to obtain a medical opinion on whether Plaintiff's impairments equaled a listed impairment." (ECF No. 19, PageID.1722 (citing ECF No. 11-11, PageID.800-801.)) This Court remanded the case with instructions for the ALJ to obtain a medical opinion regarding whether Plaintiff's impairments met or equaled a relevant listing. (*Id.* (citing ECF No. 11-11, PageID.803-804.)) The Appeals Council followed suit and instructed the ALJ to obtain the medical opinion (in addition to instructing Plaintiff to consolidate a new claim with the existing one). (ECF No. 11-11, PageID.818.)

Plaintiff attended a second hearing in June 2019, where the ALJ decided again that Plaintiff was not disabled. (ECF No. 11-10, PageID.633-657.) The Appeals Council denied Plaintiff's request for review. (ECF No. 11-10, PageID.633-626.) The parties filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 18, 19.)

### B. Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g). The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286. (internal citations omitted).

### C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period
of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is

determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing
> substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your
> impairment(s). If you do not have a severe medically determinable physical
> or mental impairment that meets the duration requirement . . . or a
> combination of impairments that is severe and meets the duration
> requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your
> impairment(s). If you have an impairment(s) that meets or equals one of our
> listings in appendix 1 of this subpart and meets the duration requirement, we
> will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional
> capacity and your past relevant work. If you can still do your past relevant
> work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your residual
> functional capacity and your age, education, and work experience to see if
> you can make an adjustment to other work. If you can make an adjustment
> to other work, we will find that you are not disabled. If you cannot make an
> adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir.

2001). "Through step four, the claimant bears the burden of proving the existence and

severity of limitations caused by [his or] her impairments and the fact that [he or] she is

precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the

residual functional capacity, which "is the most [the claimant] can still do despite [his or

her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 11-10, PageID.650.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 1, 2015, the alleged onset date. (*Id*. at PageID.638.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: cervical, thoracic, and lumbar degenerative disc disease; coronary artery disease, status post myocardial infraction with stenting; ischemic heart disease; insulin dependent diabetes mellitus; chronic headaches; obesity; hypertension; peripheral vascular disease; abdominal aortic stenosis, status post stent, graft, and post-stent angioplasty; peripheral neuropathy; plantar fasciitis; and tarsal tunnel syndrome. (*Id*.) The ALJ found several nonsevere impairments. (*Id*. at PageID.639.)

Importantly, for purposes of the issue presented before the Court in this Motion, the ALJ found that none of these impairments met or medically equaled a listed impairment at step three. (*Id*. at PageID.641.)

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs; never climb ladders or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. The work must allow for the exercise of a sit/stand option, which I define as follows: there must be work that can be done in both the sitting and standing positions such that the change in position will not cause the worker to go off task. After sitting for 30 minutes, the worker should have the option to stand up for up to 10 minutes; after standing for 10 minutes, the worker should have the option to sit for up to 30 minutes. The claimant must avoid concentrated exposure to vibration. There should be no exposure to workplace hazards such as unprotected heights and hazardous machinery. The work should not require the operation of a motor vehicle as a job duty.

(*Id.* at PageID.643.) At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work. (*Id.* at PageID.648.) Finally, at step five, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. (*Id.* at PageID.649.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.* at PageID.650.)

### E.  Administrative Record

#### i.      Plaintiff's Testimony at the Administrative Hearing

Because the issue raised in the present Motion is so narrowly focused on the ALJ's adherence to the Appeals Council's order, the review of the testimony will focus only on those parts of the hearing necessary to the issue before the court.

A hearing was held on June 12, 2019 before an ALJ. (ECF No. 11-10, PageID.658.) The ALJ asked Plaintiff's counsel, "Counsel, this is a remand. It's one of the SDM case remands. I talked to you briefly off the record. It's my understanding that you believe, up

to this point, at least, we are in compliance with the remand order." And Plaintiff's counsel responded, "Yes, sir. I do agree with that." (ECF No. 11-10, PageID.661.)

Then, the ALJ asked, "counsel, is there anything else that's outstanding that we don't have?" Plaintiff's counsel responded, "No, sir. And as I pointed out in our note kind of outlining the medical evidence, I think everything's in. We did try to get and RFC or a medical source statement from the primary care facility. And as I'm sure you saw in those notes, they weren't really willing to comply." (*Id*. at PageID.662.) The ALJ responded, "All right. If you do receive one, you feel free to submit it as long [as] I receive it prior to signing the decision." (*Id*.) The ALJ continued, "Or, if something comes up and you want us to hold off for some reason, you need time, let us know that. I'll be very liberal with you in that regard." (*Id*. at PageID.663.)

### F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources and nonmedical sources. An acceptable medical source means a medical source who is a:

(1)    Licensed physician (medical or osteopathic doctor);

(2)    Licensed Psychologist, which includes:

     (i)    A licensed or certified psychologist at the independent practice level; or

      (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3)    Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4)    Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5)    Qualified speech-language pathologist for speech or language impairments only. For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6)    Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7)    Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8)    Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. § 404.1502(a).

A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school

psychologist and acting within the scope of practice permitted under State or Federal law." *Id.*, § 404.1502(d).

In contrast, a nonmedical source means "a source of evidence who is not a medical source." *Id.*, § 404.1502(e). "This includes, but is not limited to: (1) You; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id.*, § 404.1520c(a). "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

Of these factors, the first is "supportability." This factor considers that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.*, § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the claim. This includes the consideration that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.*, § 404.1520c(c)(2).

In addition, the SSA will consider the "[r]elationship with claimant[.]" *Id.*, § 404.1520c(c)(3). This factor will include the analysis of:

(i)    Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(ii)    Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(iii)    Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s);

(iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s);

(v)    Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder[.]

*Id.* The fourth factor of the SSA's analysis is "specialization." In making this determination, the SSA will consider "[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area

of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty." *Id.*, § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.*, § 404.1520c(c)(5). "This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record." *Id.*, § 404.1520c(b)(1).

"Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single

11

analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." *Id.*, § 404.1520c(b)(2). As such, the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported" and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors[] for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.*, § 404.1520c(b)(3).

The regulations clarify that the SSA is "not required to articulate how we considered evidence from non-medical sources using the requirements of paragraphs (a) through (c) of this section." *Id.*, § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." *Id.*, § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities;" "[d]isability examiner findings," meaning, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate issue about whether you are disabled;" and "[s]tatements on issues reserved to the Commissioner[;]" these statements include:

(i)     Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)    Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments[];

(iii)   Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels [] instead of descriptions about your functional abilities and limitations[];

(iv)    Statements about whether or not your residual functional capacity prevents you from doing past relevant work[];

(v)     Statements that you do or do not meet the requirements of a medical-vocational rule[]; and

(vi)    Statements about whether or not your disability continues or ends when we conduct a continuing disability review[.]

*Id.*, § 404.1520b(c).

The regulations also provide that "[b]ecause a decision by any other governmental and nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about

whether you are disabled or blind under our rules." *Id.*, § 404.1504. Therefore, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits." *Id.* The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that we receive as evidence in your claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.*, § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." *Id.* Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.*, § 404.1502(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id.*, § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain. "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms

can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" *Id.*, § 404.1529(a).

But the SSA clarified, "however, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." *Id.*, § 404.1529(a).

Further, "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." *Id.*, § 404.1529(a). The SSA clarified that it will "then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will

carefully consider any other information you may submit about your symptoms." This other information may include "[t]he information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living)," which "is also an important indicator of the intensity and persistence of your symptoms." *Id.*, § 404.1529(c)(3).

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account…We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]" *Id.* The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work." *Id.*, § 404.1530(a). Stated differently, "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." *Id.*, § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)   The specific medical treatment is contrary to the established teaching and tenets of your religion;

(2)   The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)   Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)   The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)   The treatment involves amputation of an extremity, or major part of an extremity.

*Id.*, § 404.1530(c).

### G. Arguments and Analysis

#### a.  Background and Argument

Preceding the first remand in this case, the Commissioner acknowledged that a single decision-maker reviewed the medical evidence in this case, which was improper, and sought a Sentence Four remand. (ECF No. 19, PageID.1722 (citing ECF No. 11-11, PageID.800-801 ("the Commissioner requested a sentence four remand in order to obtain

a medical opinion on whether Plaintiff's impairments equaled a listed impairment.")). The

Appeals Council issued an order directing the ALJ to follow certain steps on remand. The

remanded case is now before the Court. Plaintiff argues that the ALJ failed to adhere to the

Appeals Council's remand instructions.

The language of the order is crucial in determining whether the ALJ's second

decision was in accordance with it. The Appeals Council order, in part, reads as follows:

> The Administrative Law Judge's (ALJ's) step 3 finding is not
> supported by substantial evidence. The ALJ found the claimant did not have
> an impairment or combination or impairments that met or medically equaled
> any listing. The administrative record, however, did not contain a medical
> opinion on the issue of whether the claimant's physical impairments
> medically equaled a listed impairment (20 CFR 404.1527, 416.927 and
> Social Security Ruling 17-2p, which Ruling became effective on March 27,
> 2017). The ALJ's step 3 finding is not supported by substantial evidence
> because there is no medical opinion addressing whether the claimant's
> physical impairments medically equal a listing. Remand is warranted to
> further consider the claimant's impairments at step 3.

> Upon remand, the Administrative Law Judge will:

> Obtain evidence from a medical expert related to whether the
> claimant's impairments meet or equal the severity of an impairment listed in
> Appendix 1, Subpart P, regulations No. 4 (20 CFR 404.1513a(b)(2) and
> 416.913a(b)(2)).

> Give further consideration to the medical source opinions pursuant to
> the provisions of 20 CFR 404.1527 and 416.927, and explain the weight
> given to such opinion evidence. As appropriate, the [ALJ] may request the
> treating and nontreating source provide additional and/or further clarification
> of the opinions (20 CFR 404.1520b and 416.920b).

(ECF No. 11-11, PageID.818-819.)

In his July 2019 decision, after remand, the ALJ analyzed step three and relied upon

Dr. Alice Metoyer's opinion. (ECF No. 11-10, PageID.641-43, 646-47; ECF No. 11-11,

PageID.776-780.) Specifically, he cited to Dr. Metoyer's March 15, 2018 opinion that Plaintiff failed to meet or medical equal a listing. (ECF No. 11-10, PageID.646; ECF No. 11-11, PageID.776-80.) "Thus," Defendant argues, "the error that prompted the original remand—i.e., that the step-three equivalency finding was not supported by a medical opinion—was corrected in the new decision." (ECF No. 19, PageID.1727.) However, Plaintiff argues the ALJ erred by not reviewing a new medical opinion, or, one that was not previously included in the record. But the Appeals Council's finding that the ALJ did comply undercuts that argument.

In May 2020, the Appeals Council found, in response to a letter from Plaintiff about the decision, that the ALJ complied; they wrote that he "provide[d] sufficient medical opinion evidence to comply with the Appeals Council's remand order and provide[d] support for the [ALJ's] step three finding in accordance with Social Security ruling 17-2P, which is the reason for which the Appeals Council remanded the case." (ECF No. 11-10, PageID.623.)

### b.  Relevant Law and Jurisdiction

"When the Appeals Council issues a remand order to an ALJ, the ALJ must 'take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.'" *Wilson v. Comm'r of Soc. Sec.*, 783 Fed. Appx. 489, 496-497 (6th Cir. 2019) (citing 20 C.F.R. § 404.977(b)).

I pause here to discuss an important prerequisite: jurisdiction. Defendant relies on *Hubbard v. Comm'r of Soc.* Sec., No. 18-cv-11758, 2019 WL 4866733, at *3 (E.D. Mich. June 10, 2019), *rep. & rec. adopted by* 2019 WL 4593624 (E.D. Mich. Sept. 23, 2019) in

support of its position that this Court does not have jurisdiction to review an order by the Appeals Council.

In *Hubbard*, the plaintiff sought review from this Court alleging that the "ALJ violated the Appeals Council's April 13, 2016 remand order." *Hubbard*, 2019 WL 4866733, at *2. The Court analyzed whether it had jurisdiction to review an order from the Appeals Council:

> The Sixth Circuit has not addressed the issue, but "the overwhelming majority of courts in this circuit ... have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand." *Shope v. Comm'r of Soc. Sec.*, No. 2:14-CV-2055, 2015 WL 3823165, at *8 (S.D. Ohio June 19, 2015), adopted, 2015 WL 6155919 (S.D. Ohio Oct. 20, 2015). Disagreeing with the majority view, the court in *Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 944 (E.D. Mich. 2017), held "that the failure by an ALJ to follow a remand order from the Appeals Council, even if that failure is allowed to stand by a later Appeals Council ruling, can constitute a reversible error in federal court."

> Still, other courts have continued to follow the majority view. *Smith v. Comm'r of Soc. Sec.*, No. 2:17-CV-13367, 2018 WL 7364646, at *11 (E.D. Mich. Oct. 26, 2018), adopted, 2019 WL 700096 (E.D. Mich. Feb. 20, 2019) (finding an ALJ's compliance with a remand order is an internal agency proceeding occurring before the "final decision"); *Lockhart v. Comm'r of Soc. Sec.*, No. 16-CV-12303, 2017 WL 4158668, at *3 (E.D. Mich. Aug. 23, 2017), adopted, 2017 WL 4150776 (E.D. Mich. Sept. 19, 2017) (holding that the issue is non-reviewable under § 405(g) because the remand order is not a final decision of the Commissioner); *Gutzeit v. Comm'r of Soc. Sec.*, No. 16-11650, 2017 WL 4019461 (E.D. Mich. Aug. 21, 2017), adopted, 2017 WL 4011006 (E.D. Mich. Sept. 12, 2017) (agreeing with the majority view that federal courts lack jurisdiction on this issue).

*Hubbard*, 2019 WL 4866733, at *3. The *Hubbard* Court ultimately agreed with the majority and held that it lacked jurisdiction to "review the ALJ's compliance with the remand order," and noted that under Section 405(g), a claimant may only appeal a "final

decision of the Commissioner of Social Security." *Id.* (citing § 405(g)). The remand order was not a final decision reviewable by this Court, the *Hubbard* court held, noting that "[i]nstead, the remand order is 'an internal agency matter that arises prior to the issuance of the agency's final decision, and thus falls outside the court's jurisdiction.'" *Id.* (citing *Smith v. Berryhill*, No. 17-1606, 2019 WL 2257159, at *5 (U.S. May 28, 2019)).

In contrast, Plaintiff relies on *Kaddo*, 238 F. Supp. 3d at 944, in support of her position—a case that the *Hubbard* court identified as being one of the few to disagree with the majority and find "that the failure by an ALJ to follow a remand order from the Appeals Council, even if that failure is allowed to stand by a later Appeals Council ruling, can constitute a reversible error in federal court." *Kaddo* cites to "[a]t least three district courts within the Sixth Circuit have for the purposes of the analysis, assumed, without deciding, that such an error may serve as an independent ground for reversal, and the court thus has jurisdiction to consider the issue. *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 950 (S.D. Ohio 2014); *Schults v. Colvin*, 1 F. Supp. 3d 712, 715–17 (E.D. Ky. 2014); *Long v. Comm'r of Soc. Sec.*, 2012 WL 4009597, *2–3 (S.D. Ohio Sept. 12, 2012)." *Kaddo*, 238 F. Supp. 3d. at 944. *See also Wilson v. Comm'r of Soc. Sec.*, 783 Fed. Appx. 489, 496-497 (6th Cir. 2019).[1]

Considering that the Sixth Circuit has not expressly decided this issue, and considering that many district courts have found no jurisdiction while, in contrast, some

---

[1] In *Wilson*, the Sixth Circuit cited *Kaddo* and appeared to analyze whether an ALJ followed an Appeals Council order. However, any endorsement of the *Kaddo* reasoning is only implicit, as the Sixth Circuit does not analyze whether or expressly state that it has jurisdiction over such a matter. Further, *Wilson* is unpublished. As such, considering the ongoing split in this circuit, without an express ruling from the Sixth Circuit I suggest *Wilson* is not binding on this Court.

have only "assumed, without deciding" as much, *Kaddo*, 238 F. Supp. 3d at 944, I suggest that this Court lacks jurisdiction to review an Appeals Council's order instructing an ALJ to follow certain steps on remand. As in *Smith*, "I find persuasive the majority's reasoning that an Appeals Council remand order, and the ALJ's compliance with that order, are internal agency proceedings occurring prior to the 'final decision' that a federal court has jurisdiction to review." *Smith v. Comm'r of Soc. Sec.*, No. 2:17-CV-13367, 2018 WL 7364646, at *11 (E.D. Mich. Oct. 26, 2018.)

### c. Appeals Council's Second Order

Although I suggest that this issue is beyond the scope of this Court's jurisdiction, I also note that the Appeals Council issued a second order finding that they believed the ALJ's remanded opinion was consistent with their order for remand.

In *Brown v. Comm'r of Soc. Sec.*, No. 08-CV-183, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009), the Court held that "[b]y failing to remand the matter a second time, it appears that the Appeals Council considered the ALJ's July 25, 2006 review to be in compliance with the Council's previous order of remand (AR 5)." In *Hubbard*, where the Appeals Council also declined to remand a second time, the Court similarly held "[n]o presumption is necessary here; the Appeals Council specifically found the ALJ's decision to comply with its remand order." *Hubbard*, 2019 WL 4866733, at *3.

In addition to the fact that this Court lacks jurisdiction to review an Appeals Council order, I further agree with *Hubbard*'s and *Brown*'s conclusion that where the Appeals Council declines to remand a second time, it is not this Court's role to "second-guess" their

satisfaction with the ALJ's adherence to their own prior order. *Hubbard*, 2019 WL 4866733, at *3.

### d.  Hearing Testimony

Plaintiff argues that the following interaction evidences nonadherence to the remand order: the ALJ stated, "Counsel, this is a remand. It's one of the SDM case remands. I talked to you briefly off the record. It's my understanding that you believe, up to this point, at least, we are in compliance with the remand order." And Plaintiff's counsel responded, "Yes, sir. I do agree with that." (ECF No. 11-10, PageID.661.) Plaintiff argues that in the aforementioned "off the record" conversation, Plaintiff was "under the impression that a medical expert would be consulted after the hearing[.]" (ECF No. 18, PageID.1712.) Plaintiff argues that "HALLEX 1-2-6-40 states that an ALJ may discuss issues off the record, but 'must summarize on the record the content and conclusion of any off the record discussion.'" (ECF No. 18, PageID.1713.) Plaintiff further acknowledges that "an off the record conversation is just that, one that is not recorded and therefore there is no concrete way for this Court to discern the accuracy of counsel's recollection of facts." (*Id*.)

I consider that the Appeals Council, too, cite to this interaction—it wrote, "Further, at the claimant's supplemental hearing held on June 12, 2019, you stated that you believed the Administrative Law Judge was in compliance with Appeals Council's remand order (Hearing Recording, 1:15)." (ECF No. 11-10, PageID.624.)

I suggest that my prior conclusions regarding jurisdiction and the Appeals Council order finding the ALJ in compliance apply here, too. However, for thoroughness, I note that even if Plaintiff's counsel was under the impression that a new medical opinion would

be obtained, that was not necessary per the Appeals Council order, according to their finding that the ALJ was in compliance. To the extent that Plaintiff argues the ALJ failed to follow procedural rules, i.e., summarizing off-record conversation on the record, the ALJ did provide, "I talked to you briefly off the record. It's my understanding that you believe, up to this point, at least, we are in compliance with the remand order[,]" to which Plaintiff's counsel responded, "Yes, sir. I do agree with that." (ECF No. 11-10, PageID.661.) I suggest that this argument fails.

### H. Conclusion

For these reasons, I recommend **DENYING** Plaintiff's motion, (ECF No. 18), **GRANTING** Defendant's motion, (ECF No. 19), and affirming the decision.

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 29, 2021                             S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge